783 A.2d 288

**Emil SOCHA**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BELL ATLANTIC–PENNSYLVANIA, INC.)**

**Appeal of Bell Atlantic–Pennsylvania, Inc.**

Supreme Court of Pennsylvania.

Argued Sept. 11, 2000.

Decided Nov. 5, 2001.

Gary E. Wieczorek, Thomas A. Shumaker, Richard B. Tucker, Pittsburgh, for appellant, Bell–Atlantic PA.

James A. Holzman, Harrisburg, Amber Marie Kenger, Mechanicsburg, David Hawkins, Pittsburgh, for appellee, W.C.A.B.

Daniel K. Bricmont, Pittsburgh, for appellee, Emil Socha.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and SAYLOR, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

SAYLOR, Justice.

We allowed appeal in this matter to consider the timeliness of a notice to an employer of a work-related partial hearing loss under Section 311 of the Workers' Compensation Act.

Emil Socha ("Claimant") has been employed by Bell Atlantic Pennsylvania, Inc. ("Employer") since 1968, when he worked as a switchman at Employer's facility in downtown Pittsburgh; he remained in that location until 1984. In this

capacity, Claimant was responsible for maintaining and repairing line switching equipment, which included diesel engines, generators, air compressors, and other machinery associated with emergency power. Through the course of his employment as a switchman, Claimant was exposed to considerable occupational noise, making it difficult to communicate to co-workers without shouting, and was not initially permitted to wear protective devices for his hearing. In 1984, after being assigned as a switchman to Employer's power plant, Claimant began wearing employer-provided hearing protection, which helped to reduce, but not eliminate, his occupational exposure to noise. Claimant, however, was occasionally unable to wear protective devices for his hearing, as doing so would hinder his performance of certain job functions.

In 1990, during an examination conducted by Employer for the renewal of a commercial driver's license, Claimant was informed that he was suffering hearing loss that might preclude his future eligibility to acquire such a license. Moreover, Claimant admitted that he had noticed problems with his hearing shortly after beginning work for Employer, explaining that his wife had repeatedly asked him to undergo a hearing evaluation, he experiences difficulty hearing people over the telephone, he cannot hear well in the presence of background noise, and he must increase the volume on a radio to hear it. Claimant also admitted an awareness that exposure to loud noises could damage one's hearing and that he experienced such exposure in the course of his employment.

Aside from the testing associated with the commercial driver's license, Claimant's hearing was not tested until September 6, 1995, when he was seen by Michael C. Bell, M.D. In a report issued to Claimant's attorney on that day, Dr. Bell set forth a preliminary opinion that Claimant suffered a loss of hearing secondary to industrial noise exposure. On September 25, 1995, evidently relying upon this preliminary opinion, Claimant filed a claim petition for bilateral hearing loss occasioned by continuous occupational exposure to noise and also sent Employer notice of his injury by certified mail. Employer filed an answer to the petition, denying all material allega-

tions, and asserting that Claimant had not provided it with notice of the work injury in the manner dictated by Section 311 of the Workers' Compensation Act.[1]

In support of his petition, Claimant offered into evidence a medical report from Dr. Bell, dated October 27, 1995, in which he opined that, based upon an audiogram and examination, Claimant suffered a binaural hearing loss of 17.19 percent. Dr. Bell concluded, to a reasonable degree of medical certainty, that Claimant was exposed to an occupational noise hazard that caused his hearing loss. Claimant also offered a report by Donald B. Kamerer, M.D., F.A.C.S., who concluded that Claimant's binaural hearing loss, calculated according to the American Medical Association's Guidelines, was nineteen percent.[2] Employer offered no evidence in response to the claim petition.

While finding credible Claimant's testimony regarding his occupational exposure to hazardous noise, and noting that the medical reports were consistent with one another, the Workers' Compensation Judge ("WCJ") concluded that Claimant knew by 1990 that he had suffered a significant amount of work-related hearing loss. Observing that a partial hearing

1. Act of June 2, 1915, P.L. 736, § 311, *as amended*, 77 P.S. § 631 (the "Act"). Section 311 provides that:

   Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed.

   77 P.S. § 631. This section also sets forth a discovery rule for instances in which the nature of the injury or its causal relation to employment is not readily apparent. *See id.* Pursuant to such provision, the notice period does not commence until the employee "knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment." *Id.*

2. Because of the relatively low percentage of hearing loss, the claim for specific loss benefits did not exceed a fifty-two-week period. *See* Act of June 2, 1915, P.L. 736, § 306(c)(8)(i), *as amended*, 77 P.S. § 513(8)(i). That being the case, Claimant was not required to present deposition testimony and, instead, relied only upon medical reports. *See* Section 422(d) of the Act, 77 P.S. § 835.

loss was not compensable at that time,[3] the WCJ concluded that the 120 day notice period under Section 311 of the Act did not then begin to run. The WCJ explained, however, that Claimant's existing knowledge of his disability triggered the notice period on February 23, 1995, the effective date of the amendments to the Act allowing compensation for partial hearing loss. As notice of Claimant's injury was not provided to Employer until September 25, 1995, the WCJ concluded that Claimant had not satisfied the notice provisions of Section 311 and, correspondingly, denied the claim petition. Affirming, the Workers' Compensation Appeal Board ("Board") found sufficient evidence to support the WCJ's finding that Claimant knew of his hearing loss and its relation to his employment in 1990, and that he knew or should have known of its compensability as of February 23, 1995, thus commencing the 120 day notice period of Section 311.

On further appeal, Claimant argued to the Commonwealth Court that the date of his injury for purposes of the 120–day notice provision was the date he filed his claim petition, premising such argument upon Section 306(c)(8)(ix) of the Act, which provides that:

> (ix) The date of injury for occupational hearing loss under subclause (i) of this clause shall be the earlier of the date on which the claim is filed or the last date of long-term exposure to hazardous occupational noise while in the employ of the employer against whom the claim is filed.

77 P.S. § 513(8)(ix). The Commonwealth Court, however, disagreed with this interpretation of Section 306(c)(8)(ix), concluding that the provision was intended by the General Assembly to apply solely to the calculation of compensation for

---

**3.** The Act initially provided compensation solely for a complete work-related loss of hearing for all practical intents and purposes. *See* Act of June 2, 1915, P.L. 736, § 306(c)(8), *as amended,* 77 P.S. § 513(8) (subsequently amended); *WCAB v. Hartlieb,* 465 Pa. 249, 252, 348 A.2d 746, 748 (1975). On February 23, 1995, however, the General Assembly amended Section 306(c) of the Act, allowing compensation for partial binaural hearing loss that exceeds a specified minimum threshold and "is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise." *See* Act of February 23, 1995, P.L. 1, § 2, *amending* 77 P.S. § 513(8)(i), (iii).

hearing loss cases. *See Socha v. WCAB (Bell Atlantic PA)*, 725 A.2d 1276, 1279–80 (Pa.Cmwlth.1999). The court opined that such a construction of Subsection 8(ix) was consistent with *Westinghouse Elec. Corp. v. WCAB (Peterson)*, 164 Pa. Cmwlth. 32, 641 A.2d 1277 (1994), *appeal denied*, 540 Pa. 625, 657 A.2d 495 (1995), in which the court held that the last day of occupational exposure constitutes the date of injury for purposes of calculating benefits in hearing loss cases, so as to avoid an illogical and unjust result for unemployed or retired claimants who have no earnings when they discover a compensable hearing loss. *See id.* at 1280.

The Commonwealth Court nevertheless agreed with Claimant's contention that the record evidence did not support the finding that Claimant possessed sufficient knowledge of a compensable, work-related hearing loss prior to February 23, 1995, so as to impose upon him a duty to provide notice of the hearing loss within 120 days of that date. Acknowledging that compliance with the 120–day notice provision is a factual determination to be made by the WCJ, *see Anastasio v. WCAB (NGK Metals Corp.)*, 713 A.2d 116, 119 (Pa.Cmwlth. 1997), *appeal denied*, 557 Pa. 634, 732 A.2d 618 (1998), the court invoked the principle, frequently set forth in its decisional law, that a claimant's belief or suspicion that a hearing loss is work-related is alone insufficient to confer knowledge that a compensable hearing loss has occurred. *See Socha*, 725 A.2d at 1281; *see also Anastasio*, 713 A.2d at 120; *Boeing Helicopter v. WCAB (McCanney)*, 157 Pa.Cmwlth. 76, 85, 629 A.2d 184, 189 (1993), *appeal dismissed*, 539 Pa. 321, 652 A.2d 796 (1994). The Commonwealth Court reasoned that Employer's examination of Claimant in 1990 for a commercial driver's license and the corresponding notice to Claimant that he suffered some hearing loss, contrary to the WCJ's statement, did not afford Claimant knowledge or notice that such hearing loss was work-related or that he suffered sufficient hearing loss exceeding the ten percent threshold required for benefits under Section 306(c)(8)(iii) of the Act, 77 P.S. § 513(8)(iii). *See Socha*, 725 A.2d at 1281. Reviewing the evidence, the Commonwealth Court determined that the 120–day notice period was not triggered until September 6, 1995, the date

that Dr. Bell notified Claimant's attorney of a work-related hearing loss. *See id.* As Claimant's petition was filed within 120 days of that date, the court held that Claimant had complied with the notice requirement of Section 311. *See id.* This Court subsequently granted allocatur upon Employer's petition.

Presently, the parties maintain their disagreement concerning whether the Commonwealth Court's traditional approach to the discovery rule remains viable in partial hearing loss cases. Significant to our view of the appropriate basis for the present disposition, Claimant argues that resort to the discovery principle is unnecessary in light of Section 306(c)(8)(ix)'s alignment of the date of injury with the date of claim filing. In response, Employer invokes the Commonwealth Court's conclusion that Section 306(c)(8)(ix)'s definition should apply only to calculation of benefits determinations, noting the absence of any reference to Section 311 among the terms of that subsection. According to Employer, the terms "injury" and "date of injury" should be afforded materially different interpretations, precluding any equation between the "date of injury" under Section 306(c)(8)(ix) and the "occurrence of the injury" for purposes of the notice provision of Section 311. Employer further argues that Section 308(c)(8)(ix) was intended solely to resolve the difficulties often associated with determining a claimant's average weekly wage for a hearing loss claim, since the moment of the occurrence of the compensable injury is incapable of precise ascertainment.

By its design, however, Section 306(c)(8)(ix) is not specifically directed to the calculation of benefits—rather, the provision more broadly establishes a date of injury for the discrete category of harm under Section 306(c)(8)(i), namely, occupational hearing loss resulting from long-term occupational exposure.[4] *See* 77 P.S. § 513(8)(ix) (stating that "[t]he date of injury for occupational hearing loss under subclause (i) of this clause shall be the earlier of the date on which the claim

---

4. Section 306(c)(8)(i) specifies as follows:

For permanent loss of hearing which is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise, the percentage of impairment shall be calculated

petition is filed or the last date of long-term exposure to hazardous occupational noise while in the employ of the employer against whom the claim is filed"). The concept of injury is intrinsic to the integrated workers' compensation scheme, and certainly, in crafting Section 306(c)(8)(ix), the General Assembly would have been aware that multiple consequences would flow from its designation of a specific date for such event. Therefore, the natural effect of the prescription of a date of injury under Section 306(c)(8)(ix) would be to govern all consequences resulting from this form of determination for Section 306(c)(8)(i) claims, including the establishment of the timing of the occurrence of the injury for purposes of Section 311's 120–day notice requirement. *See generally* 1 Pa.C.S. § 1953 (directing that an original statute and subsequent amendment are to be construed on a unitary basis). Employer's contrary approach is merely to identify a salutary effect of a single consequence of the date-of-injury specification (ease of benefits calculation), and to contend that this must, then, represent the General Assembly's sole purpose. No legislative history or settled principle of statutory construction is offered in support of Employer's restrictive interpretation.[5]

Significantly, however, adopting an integrated interpretation would carry its own salutary effects in terms of advancing

> by using the binaural formula provided in the Impairment Guides. The number of weeks for which compensation shall be payable shall be determined by multiplying the percentage of binaural hearing impairment as calculated under the Impairment Guides by two hundred sixty weeks. Compensation payable shall be sixty-six and two-thirds per centum of wages during this number of weeks, subject to the provisions of clause (1) of subsection (a) of this section.
> 77 P.S. § 513(8)(i). Significantly, the subsection is not solely a calculation-of-benefits provision; rather, it constitutes the substantive provision affording a right to relief under the Act for employees suffering from certain forms of occupational hearing loss.

5. Employer's suggestion that the term "date of injury" was intended as a term of art applicable solely to the calculation of benefits under Section 306(c)(8)(i) is a strained interpretation of the Act. In instances in which the General Assembly has intended to employ words as terms of art specific to particular enactments or portions thereof, it has generally accomplished this by providing specific direction and using the term of art in the enactment. *See, e.g.,* Act of October 27, 1995, P.L.

the humanitarian purposes of the Act. *See Hoffman v. WCAB (Westmoreland Hosp.),* 559 Pa. 655, 660, 741 A.2d 1286, 1288 (1999) (explaining that the Act is to be liberally construed to effectuate its humanitarian purposes, with borderline interpretations being resolved in favor of the claimant). Occupational hearing loss is an injury having a progressive and insidious nature, *see Keith v. WCAB (The Budd Co.),* 654 A.2d 183, 185 (Pa.Cmwlth.1995), and this type of harm presents significant obstacles in terms of diagnosis of disability and quantification of the degree of impairment, particularly in circumstances in which the claimant remains fully capable of maintaining his present position. *See, e.g., Hinkle v. H.J. Heinz Co.,* 462 Pa. 111, 118, 337 A.2d 907, 910 (1975)(analogizing long-term exposure to noise as a series of incidents that ultimately lead to the injury, i.e., hearing loss). In the context of a hearing loss claim, particularly one in which the impairment is not debilitating, other causes for hearing impairment, including presbycusis, complicate the determinations of work-relatedness and degree of impairment. *See generally LTV Steel Co. v. WCAB (Mozena),* 562 Pa. 205, 223, 754 A.2d 666, 675–76 (2000); *Price v. WCAB (Metallurgical Resources),* 533 Pa. 500, 507, 626 A.2d 114, 117 (1993).[6] Section 308(c)(8)(ix) aligns the date of injury for occupational hearing loss with the filing of a claim

744, § 4(b), *as amended,* 43 P.S. § 954(b) (specifically defining "employer" for purposes of the Pennsylvania Human Relations Act); 75 Pa.C.S. § 1542(a) (defining a "habitual offender" for purposes of license revocation). Here, the limitation must be inferred. Moreover, the calculation-of-benefits term of Section 306(c)(8)(i) does not itself employ the phrase "date of injury," further weakening the strength of any inference that the Legislature intended a directed application. We further note Employer's argument that Section 311's 120 day notice period should be deemed to have commenced upon the enactment of the 1995 amendments. Such an argument, however, is based upon the questionable presumption that the Legislature contemplated that one in Claimant's position should be charged with knowledge of the legislative enactment as of the date it became effective. The necessity for such an inference would be avoided by application of our interpretation below.

**6.** The 1995 amendments to Section 306(c)(8), while alleviating some of the uncertainty as to the extent of impairment necessary for compensation, did not eliminate completely the concerns regarding speculation by claimants lacking medical qualifications, *see, e.g.,* 77 P.S. § 513(8)(i),

petition, or, alternatively, the date upon which long-term exposure to occupational noise ceased.[7] Applied in connection with Section 311's 120–day notice provision, the effect of a plain meaning interpretation would be to alleviate the burden upon claimants to react to incremental changes in their auditory profile, particularly while they continue to work and suffer noise exposure with the employer subject to liability. Moreover, specification of a date certain would further remove the historic problems in proof associated with hearing loss occasioned by long-term occupational noise exposure from the time-of-injury designation. At the same time, a measure of fairness is afforded to such employers by limiting their liability to claimants who are no longer exposed to hazardous occupational noise at the behest of the employer and have provided no notice of the requisite hearing loss known to be work-related.[8] Further, employers are permitted to conduct periodic audiometric testing of employees, *see* 77 P.S. § 513(8)(vii), which affords them a mechanism by which to discover potential claims and, correspondingly, the opportunity to undertake measures to ameliorate hazardous occupational noise exposure and limit liability for hearing loss.[9]

■ Since we discern no statutory basis for limiting the effect of Section 308(c)(8)(ix) to calculation of benefits determi-

(iv) (requiring that the degree of hearing loss be established by medical evidence based upon the American Medical Association Impairment Guidelines), or the problems associated with establishing a causal connection between the hearing impairment and employment.

7. It is noteworthy that the General Assembly did not extend the designated date of injury of Section 308(c)(8)(ix) to circumstances of hearing impairment attributable to a specific, identifiable event, a type of injury governed by another provision of Section 306(c)(8). *See* 77 P.S. § 513(8)(ii).

8. Our reasoning here would not be intended to impact upon the applicability of Section 311's discovery rule with respect to a claimant who has been free, for a period of longer than 120 days, from exposure to hazardous occupational noise under the employer from whom compensation is sought.

9. The legislative design creates a direct financial incentive to employers to minimize the percentage of employee work-related hearing loss, since specific loss benefits are calculated according to the percentage of such loss. *See* 77 P.S. § 513(8)(i).

nations, we conclude that, pursuant to such provision, Claimant satisfied the notice requirement of Section 311 concurrent with the filing of his claim petition. *Cf. generally Arbogast & Bastian, Inc. v. WCAB (Bauer),* 79 Pa.Cmwlth. 364, 367–68, 468 A.2d 1220, 1222 (1984) (recognizing that service of a claim petition can provide notice to the employer under Section 311).

Although the above reasoning represents the view of a plurality, all Justices are aligned in terms of the result. Accordingly, the order of the Commonwealth Court is affirmed.

Justice NEWMAN did not participate in the consideration or decision of this case.

Justice ZAPPALA concurs in the result.

Justice CAPPY files a concurring opinion and also joins Justice NIGRO's concurring opinion.

Justice NIGRO files a concurring opinion.

CAPPY, Justice, concurring.

I agree with the majority that the Appellant, Emil Socha, ("Socha"), satisfied the notice requirement of § 631 of the Worker's Compensation Act, 77 Pa.C.S. §§ 1 *et seq.* (the "Act"), and is, therefore, entitled to benefits. I disagree, however, with the interpretation of 77 P.S. § 513(8)(ix) that underlies the majority's result. Instead, my views coincide with those reflected in Justice Nigro's concurring opinion. I, too, believe that when the General Assembly amended the Act in 1995, it intended § 513(8)(ix) to govern the calculation of compensation for hearing loss claims, and did not intend it to displace the traditional application of the discovery rule set forth in § 631 for determining the timeliness of an employee's notice.[1] I write separately to emphasize my belief concerning the point at which § 631's notice period begins to run in hearing impairment cases.

1. This is, I believe, the essence of the Commonwealth Court's decision. *Socha v. WCAB (Bell Atlantic PA),* 725 A.2d 1276 (Pa.Cmwlth.1999). I find great merit in the Commonwealth Court's interpretation of 77 P.S. § 513(8)(ix), and fully agree with the court's application of the discovery rule in 77 P.S. § 631.

In my view, an employee neither knows nor has reason to know of a hearing loss for purposes of triggering the 120–day notice period in § 631 until he is informed by a physician or other health care provider that his permanent hearing loss exceeds the ten percent threshold requirement of the Act, and that the impairment is possibly work-related. My view is based on the slowly progressive and insidious nature of the disability, and on the plain language of § 631, which requires an employee to know, not merely to suspect or to believe, that he has sustained a work-related injury. 77 P.S. § 631.

In the case *sub judice*, it is evident from the record that prior to receipt of a medical diagnosis on September 6, 1995, Socha did not know nor did he have reason to know that he had suffered a compensable hearing loss due to industrial noise exposure within the meaning of § 631. Socha's September 25, 1995 notice was, therefore, timely.

Accordingly, I join the majority's decision to affirm the Commonwealth Court's order. I also join Justice Nigro's concurring opinion.

NIGRO, Justice, concurring.

I agree with the majority that Claimant is entitled to benefits. I write separately, however, because I do not agree with the majority that the term "date of injury" in Section 306(c)(8) applies to the 120–day notice period in Section 311. Instead, I would affirm the Commonwealth Court's conclusion that the term "date of injury" in subsection 306(c)(8)(ix) pertains solely to Section 306(c)(8)'s scheme for calculating partial hearing loss benefits.[1],[2]

The fact that the General Assembly did not intend Section 306(c)(8)'s definition of "date of injury" to also apply to Section

**1.** Indeed, subsection 306(c)(8)(ix) specifically defines "[t]he date of injury for occupational hearing loss *under subclause (i) of this clause [Section 306(c)(8)]*." 77 P.S. § 513(8).

**2.** Under Section 306(c)(8)'s scheme, a court must calculate a claimant's benefits by using the claimant's wages as of his "date of injury," which as defined by that section, is either the claimant's wages when he filed a claim, or the claimant's wages on the last day the claimant was exposed

311's notice provisions is clear because the General Assembly left Section 311 unamended and Section 306(c)(8), as amended, makes no reference to Section 311. Moreover, Section 306(c)(8)'s definition does not logically work with Section 311. If the date of injury is defined for purposes of Section 311 as the date a claimant files a claim petition, there would be no need for Section 311 to require a claimant to give an employer notice within 120 days following an injury. The claim petition itself would serve as notice to the employer. Thus, I agree with the Commonwealth Court that the General Assembly did not intend for the amendment to Section 306(c)(8) to affect the time period for instigating Section 311's notice period.

Furthermore, I agree with the Commonwealth Court that Section 311's notice period should be triggered on the date a claimant is informed by a physician or other health care provider that he suffers from a work-related hearing loss of ten percent or greater. This rule definitively protects claimants who have been away from the workplace for over 120 days and later learn that they have suffered a work-related hearing impairment in excess of ten percent. While this rule extends an employer's liability to claims by claimants who are no longer exposed to occupational noise, an employer may, as the majority suggests, conduct periodic audiometric tests or periodic physical exams of employees in order to discover potential claimants and protect itself from delayed claims. Applying this rule to the instant case, Claimant notified Bell Atlantic well within Section 311's time limits because Claimant was not informed by his doctor that he suffered from a ten percent hearing loss due to industrial noise exposure until September 6, 1995 and Claimant filed his claim petition on September 25, 1995. Thus, Claimant is entitled to benefits.

Justice CAPPY joins in this concurring opinion.

to occupational noise. As noted by the Commonwealth Court, the latter case is meant to apply to a claimant who is unemployed or retired when he discovers his hearing loss. Because the claimant in that case does not have any current earnings upon which to base an award, a court may look to the claimant's earnings upon his last date of exposure to occupational noise.